NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-35956 |
| Plaintiff-Appellee, | D.C. No. 1:14-cv-03162-RMP |
| v. | |
| KING MOUNTAIN TOBACCO COMPANY, INC., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted March 15, 2018
San Francisco, California

Before: FERNANDEZ, McKEOWN, and FUENTES,[**] Circuit Judges.

King Mountain Tobacco Company, Inc. ("King Mountain") appeals the

district court's order granting summary judgment in favor of the United States in

an action to collect $6,425,683 in overdue fees under the Fair and Equitable

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

Tobacco Reform Act ("FETRA"), Pub. L. No. 108-357 §§ 611–612, 118 Stat. 1521, 1522–24 (2004), codified at 7 U.S.C. §§ 518–519. Because the parties are familiar with the facts, we do not repeat them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## A. The district court did not abuse its discretion by denying King Mountain discovery.

"Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996). The district court denied discovery after holding that the administrative record demonstrates the accuracy of the agency's determinations of liabilities owed by King Mountain under FETRA. *See Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986) ("With a few exceptions . . . judicial review of agency action is limited to a review of the administrative record."). King Mountain did not contest the accuracy of those determinations before the agency, and indicated that it was "satisfied with the accounting of assessments provided by [the agency] and was not further challenging the accuracy of the FETRA assessments." The agency thus affirmed the amounts owed. The district court did not abuse its discretion when it denied King Mountain further discovery on judicial review.

2

**B. The Treaty with the Yakamas does not prohibit the imposition of FETRA assessments.**

Whether FETRA assessments are "taxes" or "fees," the test for King Mountain's exemption is the same. The "express exemptive language" test applies to federal laws generally, not just to federal taxes. *King Mountain Tobacco Co., Inc. v. McKenna*, 768 F.3d 989, 994 (9th Cir. 2014); *see id.* (describing "the 'express exemptive language' test for determining whether a federal law applies to [Indians]"). As we have explained, *see United States v. King Mountain Tobacco Co., Inc.*, Nos. 14-36055 & 16-35607, — F.3d — (9th Cir. 2018), the Treaty with the Yakamas contains no "express exemptive language" that would entitle King Mountain to an exemption from a federal excise tax on tobacco products. For the same reasons, the Treaty does not entitle King Mountain to exemption from FETRA assessments.

**C. The FETRA assessments imposed on King Mountain are constitutional.**

**1. FETRA assessments do not violate the Takings Clause.**

The Takings Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. Because the Constitution "protects rather than creates property interests, the existence of a property interest" is the threshold question of any takings analysis, and it is "determined by reference to 'existing rules or

3

understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

FETRA does not effect a "classical" taking by seizing physical property. Instead, it requires King Mountain to pay quarterly assessments in the form of money. As we have cautioned, "money differs from physical property in respects significant to [a] takings analysis." *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 854 (9th Cir. 2001) (en banc).

In *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, (2013) the Court affirmed that confiscations of money, "despite their functional similarity to a tax," 570 U.S. at 615, are only treated as a taking when the confiscation operates upon or alters an identified property interest. *See, e.g.*, *Phillips*, 524 U.S. at 165 (recognizing the principal owner's property right to interest earned thereon); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162–64 (1980) (holding that a state statute taking, for the government's own use, the interest accruing on a privately owned interpleader fund deposited in the registry of the county court was unconstitutional under the Takings Clause, and that the state could not avoid the constitutional violation by legislatively or judicially recharacterizing the principal as "public money"). King Mountain fails to identify a property interest that a given FETRA assessment "operate[s] upon or

4

alters." *See Koontz*, 579 U.S. at 623. At best, King Mountain purports to locate such an interest in the Treaty with the Yakamas, arguing that FETRA interferes with King Mountain's property interest in "the 'exclusive benefit' of . . . activities conducted on Yakama reservation" land guaranteed by Article II of the Treaty. As explained above, however, no provision of the Treaty bars the Government from imposing FETRA assessments on King Mountain.

FETRA simply requires King Mountain to pay a sum of fungible money based on its market share. That requirement, without more, is not a taking.

## 2. King Mountain's FETRA assessments do not violate the Due Process Clause.

"It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). In conducting a review of legislation under the Due Process Clause, "federal courts are not assigned the task of making policy, determining a fair outcome, or determining the actual state of facts." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1342 (Fed. Cir. 2001). Rather, we "are charged simply with determining whether the congressional action was rational." *Id.* FETRA was a rational response to the unworkability of the Depression-era quota and price-support system governing

5

tobacco production, which by the 1990s had drastically inflated the price of American tobacco past the point of competitiveness. The wisdom of that decision is a policy judgment the Constitution leaves to Congress, not the judiciary.

FETRA was prospective and imposed assessments on King Mountain—and indeed, on all manufacturers of tobacco products—based on current market participation. *See Swisher*, 550 F.3d at 1058. Therefore, FETRA does not raise retroactivity issues implicating the due process clause. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 534–36 (1998) (plurality opinion).

### 3. King Mountain's FETRA assessments do not violate any other constitutional provision.

King Mountain's unconstitutional conditions challenge fails because FETRA assessments do not "deny a benefit to [King Mountain] because [it] exercises a constitutional right." *See Koontz*, 570 U.S. at 604. King Mountain's equal protection challenge also fails because FETRA, by its express terms, applies to all manufacturers of tobacco products and apportions quarterly assessments according to market share.

**AFFIRMED.**